IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:09-CV-87-D

| | |
|---|---|
| RAYFIELD DONNELL PICKETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Rayfield Donnell Pickett ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 20, 26). Both parties submitted a memorandum in support of their respective motions (D.E. 21, 27) and plaintiff submitted a reply (D.E. 30) in response to defendant's memorandum. The motions were referred to the undersigned Magistrate Judge for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 32). For the reasons set forth below, it will be recommended that the Commissioner's motion be granted, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 30 January 2006, alleging a disability onset date of 4 September 2005 due to injuries to his low back and right knee caused by being struck by a car

while at a picnic. Transcript of Proceedings[1] ("Tr.") 15, 17 ¶ 3,[2] 146, 160. The application was denied initially, *id.* 38-41, and again upon reconsideration, *id.* 45-48, and a request for hearing was timely filed, *id.* 49. On 5 March 2008, a video hearing was held before an Administrative Law Judge ("ALJ"). *Id.* 21-35. The ALJ issued a decision denying plaintiff's claim on 15 April 2008. *Id.* 15-20. Plaintiff timely requested review by the Appeals Council. *Id.* 10-11. The Appeals Council denied the request for review on 3 April 2009. *Id.* 1-4. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.1581. Plaintiff commenced this proceeding for judicial review on 29 May 2009, pursuant to 42 U.S.C. § 405(g). *See In Forma Pauperis* Mot. (D.E. 1), Order Allowing Mot. (D.E. 3), Compl. (D.E. 4).

B.  **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act goes on to describe the attributes an impairment must have to be disabling:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

---

[1] The Transcript in this case was electronically filed with the court. (D.E. 11-D.E. 19).

[2] Although on this page the ALJ states the year of the accident as 1995, the error is manifestly a typographical mistake. The decision correctly identifies 2005 as the year of the alleged onset of disability and is otherwise clearly oriented to the proper time frame.

2

42 U.S.C. § 423(d)(2)(A).

The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The burden of proving disability falls upon the claimant. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

3

Case 7:09-cv-00087-D   Document 33   Filed 06/28/10   Page 3 of 15

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 54 years old on the alleged onset date of disability and 57[3] years old on the date of the administrative hearing. Tr. 24, 69. Plaintiff has a high school education and his past work experience includes employment as a truck driver. *Id.* 24.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. *Id.* 17 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): degenerative disk disease of the lumbar spine with low back pain and right knee pain. *Id.* 17 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. *Id.* 17 ¶ 4.

---

[3] At the hearing, plaintiff responded affirmatively to the question "Our records show you were born November 9, 1950, and that would make you 47, right?" Tr. 24. In fact, of course, his birth date would have made him 57 at the time of the hearing.

The ALJ determined that plaintiff has the RFC to perform a full range of work at the medium exertional level. *Id.* 18 ¶ 5. Specifically, the ALJ found plaintiff able to: lift and/or carry up to 25 pounds on a frequent basis and up to 50 pounds on an occasional basis; and stand, walk, and sit for a total of 6 hours per 8-hour workday. *Id.* 18 & n.1.

Based on this RFC, the ALJ found at step four that plaintiff could perform his past relevant work as a truck driver. *Id.* 19 ¶ 6. In making this finding, the ALJ relied on the definition for "truck driver, heavy," code number 905.663-014. in the *Dictionary of Occupational Titles* ("*DOT*"). *Id.* 19-20. It describes such work to be at the medium exertional level. *Id.* 20 n.2. The ALJ accordingly found plaintiff not disabled, and did not reach step five of the analysis. *Id.* 20 ¶ 7.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed because the ALJ erred by: (1) finding that plaintiff has an RFC for the full range of medium work; (2) improperly assessing plaintiff's credibility; (3) determining that plaintiff could return to his past work as a truck driver; and (4) failing to complete step five of the sequential evaluation process. The court will address each of these contentions in turn.

6

C.  **Plaintiff's RFC**

Plaintiff argues that the ALJ's RFC determination is erroneous because it is not sufficiently restrictive and thereby is not supported by substantial evidence. The court disagrees and finds that substantial evidence supports the RFC determination.

This evidence includes plaintiff's treatment records. These records are from the following providers: Pitt County Memorial Hospital (Tr. 113-23); Duplin General Hospital (*id.* 124-42); defendant's apparent primary care physician, Marshall K. Quinn, M.D. of the Goshen Medical Center (*id.* 147-161, 170-186,[4] 190-209); and Atlantic Orthopedics (*id.* 143-46, 187). The ALJ reviewed the treatment records in detail as part of his RFC (and credibility) analysis. *Id.* 19.

Plaintiff was treated at Pitt County Memorial Hospital on the day of the accident, but its records do not contain findings regarding plaintiff's lumbar spine or right knee. He was also seen at Duplin Hospital the day of the accident and three days later, on 7 September 2005. On the latter date, he was found to have, in relevant part, a contusion to his low back and was prescribed pain medication. *Id.* 139, 140.

At Duplin Hospital, plaintiff had x-rays taken of his lumbar back on 7 September 2005 (*id.* 142) and MRIs taken on 26 September 2005 (*id.* 157) and 13 February 2006 (*id.* 173). The results of the first two tests were normal. The third showed slight to moderate degenerative changes of the lower lumbar spine, including early changes of spondylolysis (*i.e.*, dissolution of the vertebra)[5] on the right L5, but with "normal" vertebral alignment and "[n]o frank disc herniation or spinal

---

[4] Pages 171-72 and 174-86 are duplicates of pages 147-148 and 149-61. All these records appear in the exhibits (Ex. 4F and 6F) dedicated to Dr. Quinn's records.

[5] *Dorland's Illustrated Medical Dictionary* ("Dorland's") 1780, entry for "spondylolysis" (31st ed. 2007).

7

stenosis" (*i.e.*, narrowing of the spinal canal or intervertebral spaces).[6] *Id.* 173. Plaintiff had x-rays of his right knee taken on 26 September 2005 (*id.* 156) and an MRI taken on 17 October 2005 (*id.* 129). The first of these tests was normal and the second showed only minimal degenerative change. The ALJ refers to this back and knee testing in his decision. *Id.* 19.[7]

Plaintiff saw Dr. Quinn over 15 times between 12 September 2005 and 14 November 2007, as the ALJ notes. *Id.* 19. Plaintiff's low back and knee pain were the principal, though not always the exclusive, focus of these visits. From the outset, plaintiff received medication for this pain, including Tylenol #3 until November 2006 when he switched to Darvocet, with which he had no problems. *Id.* 192, 193. On several occasions, plaintiff was given a straight leg raising test (to check for possible lumbar disc problems)[8] and the results were positive. *Id.* 149 (8 Feb. 2006), 153 (28 Nov. 2005), 170 (16 May 2006). Nevertheless, there were no changes in his treatment. As the ALJ states, plaintiff's visits to Dr. Quinn were otherwise largely unremarkable. *Id.* 19.

There are two notes by Dr. Quinn that refer to disability, both in November 2005. In the first, Dr. Quinn observes of plaintiff that "[i]f he is unable to do his job then he may need to try for disability." *Id.* 154 (8 Nov. 2005). In the other note, Dr. Quinn states of plaintiff's chronic low back pain that "I expect slow improvement but may be disabled from this injury." *Id.* 153 (28 Nov. 2005). Dr. Quinn's subsequent records do not include any further discussion of disability.

At his 4 June 2007 visit to Dr. Quinn, plaintiff requested a note to be relieved from jury duty. *Id.* 199-200. Dr. Quinn declined to provide it, stating that there was no medical reason for the

---

[6] *Dorland's* 1795, entry for "spinal stenosis."

[7] The ALJ mistakenly identifies the February 2006 MRI as occurring in May 2006, an immaterial error. *See* Tr. 19.

[8] *See* Xin Shiqing, M.D., *et al.*, 69 *Journal of Bone & Joint Surgery* 517 (1987).

8

Case 7:09-cv-00087-D   Document 33   Filed 06/28/10   Page 8 of 15

excuse. *Id.* 200. Plaintiff testified that he obtained an excuse from some other physician. *Id.* 33-34.

Plaintiff visited Atlantic Orthopedics four times—6 and 28 October 2005, and 9 and 21 December 2005. As the ALJ discusses, orthopedist R. Mark Rodger, M.D.[9] found at the 6 October 2005 visit that plaintiff was able to fully squat and extend his right knee without significant weakness; his knees were grossly normal; and he had a good range of motion of his back. *Id.* 19, 143. The note states that plaintiff had pain in his back and right knee, but only a short course of physical therapy was prescribed. *Id.* 143.

The notes by Dr. Rodger on the 28 October and 9 December 2005 visits characterized MRIs of plaintiff's knee and lumbar back as essentially normal. *Id.* 144, 145. At his 21 December 2005 visit with orthopedist Robert B. Boswell, M.D.,[10] plaintiff reported that although the physical therapy had been of minimal help, his only difficulty was while kneeling and that he could otherwise do all his normal activities. *Id.* 146. Dr. Boswell's clinical impression was of persistent, intermittent bursitis (*i.e.*, inflammation of the bursa, which are fluid-filled sacs or saclike cavities that prevent friction between tissues)[11] and/or tendon contusion in the right knee, for which pain medications were prescribed. *Id.* Both the 28 October and 9 December 2005 notes speak of plaintiff returning to work. *Id.* 144, 145.

Thus, plaintiff's treatment records are devoid of objective medical findings consistent with disabling limitations, as the ALJ observed. *Id.* 19. Nor do the treatment records contain any medical

---

[9] At each of the first three visits, plaintiff was seen by a physician's assistant, and both he and Dr. Rodger signed the report on the visit.

[10] Both Dr. Boswell and a physician's assistant saw plaintiff on this visit, but only the physician's assistant signed the report on it.

[11] *Dorland's* 266, entry for "bursa"; 269, entry for "bursitis."

opinions that plaintiff's low back or knee impairments restrict his functional capacity to work, let alone deprive him of that capacity altogether. There is specifically no medical opinion in the treatment records stating that he is restricted to work below the medium exertional level, or at or below any other exertional level. To the extent that a course of treatment was prescribed for his knee and low back, it was conservative, consisting primarily of pain medication and a brief course of physical therapy. *See* 20 C.F.R. § 404.1529(c)(3)(iv), (v) (recognizing medication and other treatment as factors in evaluating a claimant's symptoms).

Furthermore, two non-examining state agency physicians who assessed plaintiff in April and July 2006, respectively, concluded that he had the RFC to perform medium work. *Id.* 163, 188-89. These are the only medical opinions in the record regarding the level of plaintiff's exertional work capacity. The ALJ stated that he "concurs" in their assessments. *Id.* 19. The ALJ thereby indicated that he relied on the assessments to confirm his determination of plaintiff's RFC. Contrary to plaintiff's contention, the ALJ's statement adequately explains the weight he gave these assessments. The ALJ's reliance on these assessments was appropriate given, among other considerations, their consistency with other evidence. *See* 20 C.F.R. §§ 404.1527(f); Soc. Sec. Ruling 96-6p,[12] 1996 WL 374180, at *2-3 (2 July 1996).

Plaintiff relies largely on his own testimony and history of his own complaints of pain for his contention that RFC imposed was erroneous. As discussed further below, the ALJ properly found

---

[12] Rulings are interpretations of the Act by the Social Security Administration that, while lacking the force of law, are entitled to deference unless they are clearly erroneous or inconsistent with the law. *Pass*, 65 F.3d at 1204 n.3 (citing *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir.1989)).

plaintiff's claim of disabling symptoms not to be fully credible. The court accordingly rejects plaintiff's challenge to the ALJ's RFC determination.

### D. Assessment of Plaintiff's Credibility

Plaintiff contends that the decision of the ALJ should be reversed on the ground that the ALJ failed to properly evaluate the credibility of plaintiff's allegations of pain and other limitations arising from his back and knee impairments, which he contends are disabling. The court disagrees that the ALJ erred.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Craig,* 76 F.3d at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "grounded in the evidence." *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4 (2 July 1996)); *see also* 20 C.F.R. § 404.1529 (setting out factors in evaluation of claimant's pain and other symptoms).

Here, plaintiff testified at the hearing that, as is undisputed, his low back and knee were injured during a car accident occurring in September of 2005. Tr. 18. He stated that he suffers from low back pain and knee pain that is always present and that he uses a cane all the time. *Id.* 26, 29. Plaintiff further testified that he exercises as much as he can and tries to go outside and walk around in the yard, but needs to rest after about 20 minutes of walking. *Id.* 28. He also stated he does obtain some relief by having his wife rub his back, walking, laying on the floor, and taking pain medication.

11

*Id.* 27, 30. In addition, plaintiff testified he washes his own dishes, puts clothes in the washing machine, and drives, but does not do any house cleaning or yard work. *Id.* 30-31.

The ALJ presented a summary of plaintiff's testimony in his decision. *Id.* 18. In assessing it, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms." *Id.*

At the second step of the credibility assessment, the ALJ found that plaintiff's testimony was not fully credible. *Id.* He stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." *Id.*

Contrary to plaintiff's contention, the ALJ provided specific reasons for his credibility determination that are not supported by substantial evidence. Most significantly, he explained that the medical records did not provide objective medical findings consistent with the disabling limitations plaintiff claims and discussed comprehensively the medical records underlying this finding. *Id.* In addition, the ALJ referenced the refusal of Dr. Quinn to provide plaintiff an excuse from jury duty, although recognizing that another physician did provide one. *Id.* The ALJ further cited to plaintiff's testimony and a written statement in the record (*id.* 107) showing that he can perform activities of daily living. *Id.* 19.

Moreover, it is apparent that the ALJ did give some weight to plaintiff's complaints. The ALJ found expressly that plaintiff's low back and knee impairments were severe and that he was limited to medium work, rather than work at a higher exertional level.

The court concludes that the ALJ's credibility determination is based on the proper legal standards and supported by substantial evidence. Plaintiff's challenge to it is accordingly without merit.

### E. Plaintiff's Ability to Perform Past Relevant Work

Plaintiff argues that the ALJ's finding that he could return to his past relevant work as a truck driver is flawed because the ALJ failed to conduct the requisite function-by-function analysis pursuant to Social Security Ruling 82-62. The court disagrees.

Under the Regulations and associated Social Security Rulings, a plaintiff is deemed able to perform his past relevant work if he retains the RFC to perform the demands and duties of past relevant work as he actually performed it or as generally performed in the national economy. *See* 20 C.F.R. § 404.1560(b)(2); Soc. Sec. Ruling 82-61, 1982 WL 31387, at *1-2 (1982); Soc. Sec. Ruling 82-62, 1982 WL 31386, at *3 (1982). "The decision as to whether the [plaintiff] retains the functional capacity to perform past work which has relevance has far-reaching implications and must be developed and explained fully in the disability decision." Soc. Sec. Ruling 82-62, 1982 WL 31386, at *3. Accordingly, a decision determining a plaintiff to have the RFC to perform past relevant work "must contain among the findings the following specific findings of fact:"

1. A finding of fact as to the individual's RFC.
2. A finding of fact as to the physical and mental demands of the past job/occupation.
3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

*Id.*, at *4.

The decision here meets these standards. The ALJ made appropriate findings regarding plaintiff's RFC for medium level work and explained the basis for his findings. Plaintiff testified

13

Case 7:09-cv-00087-D   Document 33   Filed 06/28/10   Page 13 of 15

regarding his past work duties and the ALJ properly cited to the *Dictionary of Occupational Titles* ("*DOT*") for his definition of the work of a truck driver. *See* Soc. Sec. Ruling 82-62, 1982 WL 31386, at *3; *see also* 20 C.F.R. § 404.1560(b)(2). The DOT describes work as a truck driver to be at the medium exertional level. Plaintiff having failed to meet his burden of establishing his inability to perform his past relevant work, the ALJ's determination that he could do so was not flawed.

### F. Requirement to Complete Step Five of Evaluation Process

Finally, plaintiff contends that the ALJ's failure to complete step five in the sequential evaluation process rendered his analysis incomplete. The court disagrees. Because the ALJ properly found in step four that plaintiff could return to his past relevant work as a truck driver, he was not required to perform the analysis at step five. *Delapena v. Astrue*, 2:08cv204, 2009 WL 64090, at *6 (E.D. Va. 8 Jan. 2009) (holding that where ALJ found in step four that plaintiff could return to past relevant work, "the ALJ did not, and was not required to, perform the analysis at step five."); *Johnson v. Astrue*, 4:07-CV-00070-FL, 2008 WL 2397541, at *17 (E.D.N.C. 12 Jun. 2008) ("However, the ALJ was not required to proceed to step five as he found Claimant was not entitled to benefits at step four of the analysis"). The court concludes that plaintiff's challenge concerning the ALJ's failure to complete step five of the analysis to be without merit.

### III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written

14

objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 28th day of June 2010.

/s/ James E. Gates
James E. Gates
United States Magistrate Judge